UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 20-cr-190 (RBW) |
| | : | |
| v. | : | |
| | : | |
| **SAHN WILLIAMS,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MEMORANDUM CONCERNING SAFETY VALVE ELIGIBILITY**

The Court should reject Defendant's argument that he qualifies for Safety Valve relief pursuant to the First Step Act's amendments to 18 U.S.C. § 3553(f)(1). Contrary to the 9th Circuit's opinion in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 20221), the text of the statute, principles of interpretation, and the statute's legislative history make clear that a defendant who has a prior 3-point conviction does not qualify.

**ARGUMENT**

To apply the safety valve, 18 U.S.C. § 3553(f), a district court must find that, among other things:

the defendant does not have—

(A)    more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B)    a prior 3-point offense, as determined under the sentencing guidelines; and

(C)    a prior 2-point violent offense, as determined under the sentencing guidelines[.] .

18 U.S.C. § 3553(f)(1).

Arguably, the statute's language has two possible readings.

The first and only plausible reading, urged by the government, is that § 3553(f)(1) requires that a defendant: (A) not have more than 4 criminal history points (excluding 1-point offenses); *and* (B) not have any 3-point offense; *and* (C) not have any 2-point violent offense. The panel opinion in *United States v. Garcon*, 23 F.4th 1334 (11th Cir. 2022) chose this interpretation, which means that having any of the enumerated characteristics is disqualifying. *See Garcon*, 997 F.3d at 1305-06; *see also id.* at 1307 (Branch, J., concurring) ("[T]o be eligible for the safety valve a criminal defendant must not have (A), must not have (B), and must not have (C) in order to satisfy the checklist.").[1] This view is the correct and common-sense approach, which finds support in the text, structure, context, purpose, and history of the safety valve statute.

The second possibility, urged by Defendant and adopted by the 9th Circuit in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 20221), is that paragraph (f)(1) renders eligible defendants who: (A) do not have more than 4 criminal history points (excluding 1-point offenses); *or* (B) do not have any 3-point offense; *or* (C) do not have any 2-point violent offense. Under that view, a defendant remains safety-valve eligible unless he has the idiosyncratic constellation of all three listed features: more than 4 criminal history points, a 3-point offense, and a 2-point violent offense.

The Defendant's view, and the 9th Circuit's decision, misconstrues the statute's structure, context, and legislative history, and threatens to expand the safety valve far beyond Congress's intended limits. In contrast, the government's common-sense interpretation honors the statute's purpose: exempting only low-level, nonviolent offenders from mandatory minimum sentences.

---

[1] The defense is correct that this decision is currently vacated pending *en banc* review by the 11th Circuit. However, that does not mean that the 11th Circuit will ultimately reverse course or that its reasoning is incorrect. The decision is simply vacated pending *en banc* review. At this point, briefing is ongoing, with the Government's reply due May 4th.

### A. The Safety Valve Limits Relief to Defendants Who Do Not Have Any of the Criminal History Circumstances Listed in in § 3553(f)(1).

"[T]he starting point in construing a statute is the language of the statute itself." *Randall v. Loftsgaarden*, 478 U.S. 647, 656 (1986). But "[s]tatutory language has meaning only in context," *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 415 (2005), and so the "[t]ext may not be divorced from context," *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 356 (2013); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (same).

Taken in isolation and out of context, the "not . . . and" structure of § 3553(f)(1) may be susceptible to two possible readings. However, after considering its broader context and purpose, there is only one logical conclusion. Paragraph (f)(1) limits the safety valve's benefits to defendants who do not have more than 4 criminal history points, *and* do not have a 3-point prior offense, *and* do not have a 2-point prior violent conviction. Having any of those undesirable features disqualifies a defendant. Here, because there is no dispute that Defendant Williams has a disqualifying prior 3-point offense, he is precluded form safety valve relief.

### 1. The Correct (Distributive) Interpretation of the Safety Valve Preserves a Conjunctive Meaning for "And" but Nonetheless Disqualifies Defendant Williams

The 9th Circuit determined that § 3553(f)(1)'s text and the ordinary conjunctive meaning of the word "and" favors Defendant William's interpretation. That conclusion rested on the flawed premise that only Defendant's reading affords § 3553(f)(1)'s word "and" a conjunctive meaning.

When a statute uses the word "and" in its ordinary conjunctive sense, it "combines items." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) (hereinafter, "*Reading Law*"). Thus, if one says, "You must have A, B, and C," the statement

ordinarily means that "all three things"—A, B, and C—"are required." *Id.* In other words, the statement means: "You must have A" and "You must have B" and "You must have C."

Oftentimes, a distributive reading offers the only natural interpretation of a statement. Imagine a public announcement states, "Under Florida law, every citizen is eligible to vote this November, but this rule does not extend to—(A) minors under the age of 18; (B) individuals who fail to register with the Secretary of State by the statutory deadline; and (C) convicted felons still serving their sentences." It is evident that a person's eligibility to vote hinges on not being a minor, not being an unregistered person, and not being a convicted felon. Accordingly, the reader should distribute the phrase "does not extend to" to each of the three lettered subparagraphs. Indeed, no one would suggest that this announcement authorizes an unregistered 35-year-old prison inmate (much less every 6-year-old with an unblemished rap sheet) to vote.

Congress drafted § 3553(f)(1) in the same form as the statement above. Section 3553(f)(1) requires proof that the defendant "does not have" the subsequently enumerated conditions (A), (B), and (C). Admittedly, one theoretically possible reading (which is advanced by the defendant) is that the negative prefatory phrase ("the defendant does not have") modifies only the union of the snippets of language in subparagraphs (A) through (C). On the other hand, another grammatically sound reading is that the negative prefatory phrase *distributes* to modify each of the items severally. Under this reading, a defendant is eligible for safety-valve relief under § 3553(f)(1) if he does not have any of the listed criminal-history conditions.

Unfortunately, grammatical rules alone cannot resolve which reading of § 3553(f)(1) is correct. The only way to know is to examine the provision in context. *See, e.g.*, *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 n.5 (2021) ("Linguistic canons are tools of statutory interpretation whose usefulness depends on the particular statutory text and context at issue."); *Caraco Pharm.*

*Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 413-14 & n.6 (2012) (recognizing that a similar negative phrase, "not . . . an," can have different meanings depending on context, and "dictionary definition[s]" alone cannot resolve the matter). Here, the structure and context of the statute establish that the distributive reading of paragraph (f)(1) is the only viable interpretation.

### 2. Defendant Williams's Interpretation Violates the Rule Against Surplusage

"[O]ne of the most basic interpretive canons" is "that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) (cleaned up). Here, the Defendant's combination reading would render subparagraph (A) superfluous.

Subparagraph (A) requires that eligible defendants "not have . . . more than 4 criminal history points," excluding 1-point offenses. 18 U.S.C. § 3553(f)(1)(A). The next subparagraph prohibits having "a prior 3-point offense," and the final forbids having "a prior 2-point violent offense." *Id.* § 3553(f)(1)(B), (C). The pertinent criminal-history provisions of the Guidelines— USSG §§ 4A1.1 and 4A1.2—refer to a "prior sentence of imprisonment" rather than an "offense," but, in context, the meaning is apparent. If a defendant has a prior judgment that counts for 3 points under USSG § 4A1.1, that would constitute "a prior 3-point offense" for purposes of § 3553(f)(1)(B). While the safety valve does not echo the precise terminology of the Guidelines (*i.e.*, "prior sentence of imprisonment"), it expressly describes offenses under all three subparagraphs "as determined under the sentencing guidelines," § 3553(f)(1)(A)-(C), which is an unmistakable directive to consult USSG §§ 4A1.1 and 4A1.2.

As the 11th Circuit explained in its panel decision in *Garcon*, any time a sentencing court finds that the defendant fails subparagraph (B) and subparagraph (C), the court necessarily will have found that the defendant has "more than 4 criminal history points" under (A). In such cases,

the defendant's 2-point and 3-point offenses already result in at least 5 criminal history points. Thus, if Defendant's interpretation was correct, "there would be no need for the requirement in (A) that a defendant must have more than four criminal history points total." *Garcon*, 997 F.3d at 1305. Construing § 3553(f)(1)'s three subparagraphs as a package would leave subparagraph (A) without any discernable purpose. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 476-77 (2003) ("[W]e should not construe the statute in a manner that is strained and, at the same time, would render a statutory term superfluous."). The panel was right that "the canon against surplusage . . . carries the day" in the government's favor. *Garcon*, 997 F.3d at 1306.

There is good reason to grant this interpretive canon special weight in this context. "The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). Moreover, subparagraph (A) is not a single word or a stray term at the end of a lengthy list that one might dismiss as inadvertent redundance. *See, e.g.*, *id.* at 385-86 (listing several statutes that contain the arguably redundant phrase "and costs" in fee-shifting provisions); *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004) (adopting interpretation of complex bankruptcy statute that rendered a single word, "attorney," surplusage); *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (same, for the final "numerical cross reference in a parenthetical"). The total-criminal- history-points disqualifier is the first listed condition in § 3553(f)(1) and consists of an entire, separately enumerated phrase. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 632 (2018) (rejecting position "that would render an entire subparagraph meaningless"). There is no reasonable way to treat the lead subparagraph in § 3553(f)(1) "as stray marks on a page" or "notations that Congress regrettably made but did not really intend." *Advoc. Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017).

3.  **Other Structural and Contextual Features Favor the Government's Interpretation**

Additional considerations demonstrate that § 3553(f)(1) functions as a checklist, distributing the phrase "does not have—" to each criminal-history condition.

First, section 3553(f)(1)'s careful formatting and punctuation further support a distributive reading of the statute's prefatory clause. Congress placed an em-dash after the prefatory phrase, introduced each requirement with an enumerating letter (A, B, C), and separated the requirements with semicolons. That architecture confirms that the phrase "does not have" in the prefatory clause modifies each requirement individually. *See Mitchell v. Chapman*, 343 F.3d 811, 829-30 & n.20 (6th Cir. 2003) ("[T]he use of the em dash indicates that the provisions following the em dash modify the immediately preceding provision or term."); *United States v. Nofziger*, 878 F.2d 442, 450 (D.C. Cir. 1989) (explaining that a dash signals that a prefatory word or phrase applies to the each of the items that follows it).

Consider the difference between a set of requirements appearing on one line, separated by commas—*e.g.*, "you must not lie, cheat, and steal"–and a set of identical requirements appearing as they do in §3553(f)(1):

> You must not—
>
> > (A) lie;
> >
> > (B) cheat; and
> >
> > (C) steal.

The latter structure more clearly signals that the prefatory phrase "must not" modifies each item individually. In fact, the em-dash often accomplishes this purpose by itself. Take the sentence: "The selection of croissants—plain, almond, and chocolate—was excellent." *See* Merriam-Webster Online, *A Guide to Em Dashes, En Dashes, and Hyphens* (describing how an em-dash

can introduce a list). The em-dash and the conjunction "and" distribute the listed adjectives severally rather than jointly to the noun "croissants." The typical English speaker would grasp that the array of pastries consists of plain croissants, almond croissants, and chocolate croissants, not that every croissant is plain, almond, and chocolate. Here, the government's reading, which treats each criminal-history requirement as an independent object completing the "does not have" phrase, fits this mold.

Second, the 9th Circuit's and Defendant's interpretation is inconsistent with the safety valve's purpose of granting more lenient treatment to low-level, non-violent offenders. There is nothing special about the combination of (A), (B), and (C) that might weigh in favor of Defendant's package reading. That precise criminal history (more than 4 criminal history points, a prior 2-point offense, and a prior 2-point violent offense) is meaningless when viewed as a combination.

Rather than advancing any coherent legislative objective, Defendant's combination theory would contravene the basic principle that "[s]tatutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

Adopting Defendant's interpretation would all but eliminate the criminal-history requirement for safety-valve relief, except, as noted, for the rare defendant with the oddly specific criminal-history profile that fails all three conditions in § 3553(f)(1). And it would expand eligibility to defendants that Congress could not have plausibly deemed worthy of relief. One court pointed out this absurd result this way:

> [A] defendant who had ten prior 3-point drug-trafficking convictions—and thus a total of 30 criminal-history points earned through drug trafficking—would be

>eligible for safety-valve relief from a mandatory minimum that Congress created for the purpose of deterring and punishing serious drug offenses. But a defendant who had a total of 5 criminal-history points on account of a 3-point burglary conviction and a 2-point domestic assault conviction would not be eligible for safety-valve relief. That makes no sense.

*United States v. Fairbanks*, No. 20-CR-0192 (PJS/DTS), 2021 WL 5903483, at *2 (D. Minn. Dec. 14, 2021).

For this reason, it makes perfect sense to understand the criminal-history conditions in subparagraphs (A), (B), and (C) as independently disqualifying items. It was reasonable for Congress to conclude: (A) if a drug defendant has committed multiple non-minor offenses, that is disqualifying; (B) if he has committed only one offense, but the offense was serious enough to merit a lengthy sentence, that, too, is disqualifying; and (C) if he has committed a violent offense, that is disqualifying as well. This distributive interpretation "assigns distinct and harmonious functions to each of subparagraphs (A)–(C). . . . [S]ubparagraph (A) excludes repeat offenders, subparagraph (B) excludes [serious] felons, and subparagraph (C) excludes violent offenders." *United States v. Wells*, 2021 WL 2912474, at *4 (C.D. Ill. July 12, 2021). Together, these contextual factors compel a distributive reading of the statute.

### 4. The Legislative History Supports a Distributive Reading

There is no need to consult the legislative history or other extratextual sources because, in context, § 3553(f) is straightforward and unambiguous. *See Gen. Elec. Co. v. E.P.A.*, 360 F.3d 188, 191 (D.C. Cir. 2004). Nonetheless, because defendant has invoked the rule of lenity, it bears noting that courts "have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990) (internal quotation marks omitted). Here, the statute's legislative history supports the government.

The debate surrounding the 2018 amendments to § 3553(f), including statements of two of the First Step Act's sponsors, uniformly understood those changes to be "modest." *See, e.g.*, 164 Cong. Rec. S7745-01, S7749 (daily ed. Dec. 18, 2018) (Senator Leahy describing the bill as a "compromise" with a "*modest* expansion of the safety valve") (emphasis added); 164 Cong. Rec. S7648-01, S7649 (daily ed. Dec. 17, 2018) (Senator Grassley describing the safety-valve expansion as covering "low-level, nonviolent offenders"). No legislator, in contrast, described the safety-valve amendments as allowing relief for nearly every offender except those with a rare and meaningless combination of criminal-history points. To the contrary, guidance issued by the Senate Judiciary Committee shortly before the First Step Act's enactment made clear that "offenders with prior '3 point' felony convictions...*or* prior '2 point' violent offenses...will *not* be eligible for the safety valve[.]" Senate Committee on the Judiciary, *The First Step Act of 2018 (S.3649)–As Introduced* (Nov. 15, 2018) (explaining S. 1917, §102, 115thCong.(1st Sess. 2018)) (first emphasis added).

The Sentencing Commission also has construed § 3553(f)(1)'s requirements as independently disqualifying. In an explanatory bulletin published shortly after the First Step Act's passage, the Commission posited several hypothetical applications of the revised safety valve. *See* United States Sentencing Commission, ESP Insider Express, *Special Edition: First Step Act* 6-7 (Feb. 2019). In one, the Commission considered a defendant with "a total of six criminal history points"—specifically, "two prior 2-point convictions (for non-violent offenses)" and "two criminal history points for 'status' under § 4A1.1(d)." *Id.* at 7. The Commission's bulletin instructed that such a defendant would not be eligible because he has "more than four criminal history points." *Id.* In another, the guidance explained that the only "way that a defendant with a prior violent offense can receive relief" is "if the violent offense receives only one criminal history point," *id.*

at 6, thereby implying that anyone with a 2-point violent offense would be ineligible. These conclusions are irreconcilable with Defendant's interpretation of the statute.

The Commission later released an analysis of the First Step Act's impact in its first year, which noted that "[o]ffenders who have a prior 3-point offense or a prior 2-point violent offense are *excluded* from eligibility, regardless of their criminal history score." United States Sentencing Commission, *The First Step Act of 2018: One Year of Implementation* 17 (Aug. 2020) (internal quotation marks omitted) (emphasis added). The Commission reported that, after the Act's passage, the percentage of defendants receiving safety-valve relief increased from 35.7 percent to 41.8 percent, *see id.* at 18—a relative year-over-year increase of about 17 percent, and exactly the type of modest expansion that Congress contemplated.

**5.   Alternatively, a Disjunctive Reading of § 3553(f)(1) Is Appropriate.**

The contextual and historical reasons elaborated above also support the *Garcon* panel opinion's conclusion that "the 'and' in § 3553(f)(1) is disjunctive." *Garcon*, 997 F.3d at 1305. That is, § 3553(f)(1) means that a defendant cannot have (A), (B), or (C) to remain eligible. To the extent that holding differs from the government's distributive reading (which appears in Judge Branch's concurring opinion), a disjunctive interpretation of § 3553(f)(1) also offers a plausible interpretation of the statutory text.

Congress does not invariably use the word "and" conjunctively. As the Supreme Court and this Court long have recognized, conjunctions such as "and" and "or" may be interchangeable in certain contexts. "[C]ourts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" *United States v. Fisk*, 70 U.S. 445, 447 (1865) (emphases omitted*); cf. De Sylva v. Ballentine*, 351 U.S. 570, 573 (1956) ("[T]he word 'or' is often used as a careless substitute for the word 'and' . . . . That trouble with the word has been with us for a long time[.]").

*Peacock v. Lubbock Compress Co.*, 252 F.2d 892 (5th Cir. 1958), is instructive. There, a cotton company maintained that it did not have to pay its workers' overtime at an increased rate (as otherwise required by the Fair Labor Standards Act), because, at the time, the statute exempted "'employer[s] engaged . . . in the ginning *and* compressing of cotton.'" *Id.* at 893 (quoting 29 U.S.C. § 207(c) (1958) (repealed)) (emphasis added). The company's workers disagreed, observing that the company "engaged exclusively in compressing cotton," but "never ha[d] engaged in the activity of ginning cotton or a combination of ginning and compressing." *Id.* This Court rejected the workers' contention and refused to give the word "and" the type of acontextual interpretation that Defendant Williams urges in this case. *Peacock*, 252 F.2d at 894-95. In a prophetic passage, the Court observed that "the word 'and' is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings." *Id.* at 893. Consistent with these principles, the *Peacock* Court "search[ed] . . . for the Congressional purpose" in the statute's context. *Id.* Discerning "no basis for concluding that the exemption was to be confined to those engaging in both ginning and compressing," it concluded that "[l]iteralism" must "give[] way in the face of" practical realities. *Id.* at 893-95; *see also Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) ("[S]tatutory context can overcome the ordinary, disjunctive meaning of 'or.'"); *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005) (observing that "and" bears its typical conjunctive meaning "unless the context dictates otherwise"); *United States v. Scrimgeour*, 636 F.2d 1019, 1021-24 (5th Cir. 1981) (construing the word "or" in perjury statute to mean "and"); *United States v. Moore*, 613 F.2d 1029, 1040 (D.C. Cir. 1979) (reaching the same holding and noting that "sometimes a strict grammatical construction will frustrate legislative intent"). When it comes to words like "and" or "or," literalism "'cannot provide a

substitute for common sense, precedent and legislative history.'" *Scrimgeour*, 636 F.2d at 1023-24 (quoting *United States v. Standard Oil Co.*, 384 U.S. 224, 225 (1966)).

## CONCLUSION

Because "[w]ords have different shades of meaning," *Yates v. United States*, 574 U.S. 528, 538 (2015) (internal quotation marks omitted), courts should "interpret the relevant words" of every statute "not in a vacuum, but with reference to the statutory context, structure, history, and purpose," *Abramski v. United States*, 573 U.S. 169, 179 (2014) (internal quotation marks omitted). The ultimate goal is to discern the legislature's intent. Of course, in some contexts, a "not . . . and" list would require the combination of every item on the list. However, in this case, Defendant Williams goes too far when he suggests that parochial interpretation is a universal one. English is a more flexible language than that. In other contexts, like the statutory interpretation in this case, a distributive reading captures the true meaning of a statement. Section 3553(f)(1) requires that a defendant not have any of the criminal history characteristics listed in subparagraphs (A), (B), and (C). Because Defendant Williams has one of those characteristics, a 3-point prior offense for Possession with the Intent to Distribute, he cannot claim the safety valve's protection.

    Respectfully submitted,

    MATTHEW M. GRAVES
    United States Attorney
    D.C. Bar Number 481052

    /s/ David T. Henek
    DAVID T. HENEK
    Assistant United States Attorney
    Violence Reduction and Trafficking Offenses
    601 D Street, N.W.
    Washington, D.C. 20530
    N.Y. Bar No. 5109111
    david.t.henek@usdoj.gov
    202-252-7825

CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing Memorandum was filed via CM/ECF, thereby notifying all counsel of record.

/s/ David T. Henek
DAVID T. HENEK
Assistant U.S. Attorney